## WILLIAM D. ATKINSON *vs.* GEORGE RUNNELLS.

*Nominal party—release of—when real party will not be protected from it.*

The *bona fide* assignee of a chose in action will, in general, be protected against the release of the nominal plaintiff, executed after notice to the defendant of the assignment.

But where the payee of a negotiable promissory note fraudulently indorsed it before maturity, and without value to the plaintiff, for the purpose of excluding any inquiry into the fraudulent inception or want of consideration of the note, and by fraudulent assertions and devices concealed the true relations of the parties—in an action of *scire-facias* to obtain an *alias* execution upon the judgment recovered upon such note in favor of the indorsee against the maker; *Held,* That the court would not set aside a release from the judgment creditor to the defendant, but let it have its legitimate effect.

ON REPORT.

SCIRE-FACIAS requiring the defendant to show cause why an *alias* execution should not be issued upon a judgment recovered by the plaintiff against the defendant at the September term, 1867, of this court, upon which judgment execution issued Oct. 17, 1867, and was returned satisfied by a levy upon certain real estate in Pittsfield, because, as the plaintiff alleged, the title to the land levied on, at the time of the levy, was not in the defendant, but in one Small, and that nothing passed by the levy.

Writ dated Feb. 23, 1869.

Plea, *nul tiel record*, with brief statement alleging

1. That the judgment was satisfied by the levy; and

2. That on March 15, 1871, the plaintiff, by his deed of release, duly executed and delivered to the defendant, released and discharged the defendant from said judgment and execution.

After the plaintiff rested, the defendant introduced a deed of release to himself from the plaintiff, duly executed and dated March 15, 1871.

John C. Manson, called by the plaintiff, testified, subject to objection, substantially,

That the note upon which the original suit was brought, was his property, and always had been; that it was sued in the name of Atkinson, by him and with the consent of Atkinson; that no part of the judgment has been paid in any manner, except by the levy; that Atkinson never had any authority to release or discharge the judgment; that the defendant knew Manson was owner of the judgment before the release was executed.

On cross-examination. That witness, in February, 1871, in-

formed, indirectly informed the defendant, that witness owned the note by telling defendant he would settle it; that he told defendant at same time, he sued the note in the name of Atkinson, because a man who had tried to collect the note had informed him that defendant hesitated about paying it; that witness, in April, 1867, told defendant that Atkinson owned the note, and that Atkinson had the note and paid witness $20 on it in April, 1867, and did not know whether Atkinson got the $20 of defendant; and that he did not remember whether he told Atkinson to represent to defendant that Atkinson owned the note or not.

Defendant's counsel asked the witness the following questions, which were objected to by plaintiff's counsel and excluded by the court.

Was not the note given for a patent clothes-wringer, which was utterly worthless, and known by you to be so?

Did you not tell the defendant since the judgment was recovered, that the suit was brought in Atkinson's name, because the note was worthless in your hands, and that it was transferred to Atkinson to make it good?

Have you not frequently so stated to various persons?

William D. Atkinson, called by the defendant, testified that he gave no consent to have the original suit brought in his name before the suit was commenced, that he did not recollect that he knew of the suit before the levy was made.

The court to draw such inferences as a jury might, and render such judgment as the law and the facts, or so much thereof as is legally admissible, require.

If the questions put by defendant's counsel and excluded by the court should have been admitted, and if the defense is not otherwise entitled to prevail, the case to come back for new trial.

*George W. Whitney*, for the plaintiff.

Courts will protect the rights of the real owners against the fraudulent acts of nominal parties. Negotiable paper, indorsed in blank, may be sued by the holder in the name of a third person by his consent.

Atkinson *v.* Runnells.

Such nominal plaintiff is a mere trustee, and will not be permitted to violate his trust to the injury of the real party in interest. *Jones* v. *Witter*, 13 Mass. 304; *Peabody* v. *Tarbell*, 2 Cush. 226; *Riley* v. *Taber*, 9 Gray, 372; *Stevens* v. *Parker*, 3 Allen, 256; *Hackett* v. *Martin*, 8 Maine, 77; *Portland* v. *Ins. Co.*, 42 Maine, 221; *Pratt* v. *Dow*, 56 Maine, 81.

*D. D. Stewart*, for the defendant, cited upon the validity of release, *Gibson* v. *Winter*, 5 B. & Ad. 96; *Banerman* v. *Radenius*, 7 T. R. 663; *Wilkinson* v. *Lindo*, 7 Mees. & Wels., 87; *Herbert* v. *Piggot*, 2 Cres. & M. 384; *Phillips* v. *Claggett*, 11 Mees. & Wels., 84, 91, 92.

WALTON, J. It appears that one John C. Manson had obtained of the defendant a note, which, in his own hands, he feared he could not collect. He says a man told him that the defendant hesitated about paying it. He declines to tell what the note was given for. Being a witness upon the stand, he was asked if it was not given for a patent clothes-wringer, known by him to be worthless. He declined to answer. The court is authorized to draw inferences. The inference is not difficult. A suit in his name could be defended on the ground of fraud. Want or failure of consideration would also be a defense. A suit in the name of some confidential friend might shut out such inquiries. Such would be the effect if the defendant or the court could be cheated into the belief that the plaintiff was a *bona fide* holder for value. The note was payable on time. Such a cheat was not, therefore, difficult. Thereupon the note was indorsed and delivered to William D. Atkinson, the plaintiff. To give the transaction the appearance of a *bona fide* sale, the indorsement was made special, 'without recourse.' A suit was commenced in the name of this confidential friend, and, after a delay of over two years, judgment was obtained. Manson confesses that while that suit was pending he told the defendant that Atkinson owned the note. If it had become necessary to a successful prosecution of the suit, can any one acquainted with such trials doubt that he would have sworn to it? An execution was

issued and levied upon the defendant's real estate. This is a writ of *scire facias* requiring the defendant to show cause why an alias execution should not issue. The defendant says an alias execution should not issue for two reasons. First, because the first execution was satisfied by the levy. Second, because he has a release of the judgment under the hand and seal of the plaintiff. Manson asks us to set that release aside. Why the plaintiff gave such a release,—whether it was because he did not longer want to be the fraudulent agent of Manson, or whether it was on account of a quarrel between them, thus verifying the old maxim, that when rogues fall out and disagree honest men get their dues,—does not appear. It is not important. The release being under seal, a sufficient consideration is conclusively presumed.

That such a release will sometimes be set aside is undoubtedly true. The *bona fide* assignee of a chose in action, will, in general be protected against the release of the nominal plaintiff executed after notice to the defendant of the assignment.

But how is it when the court is asked to set aside a release in order to give effect to a secret, covinous agreement, entered into for the express purpose of cheating the defendant out of his defense? An arrangement by which fraud is to be made easy and a defense difficult? An arrangement originating in moral turpitude, and likely to end in positive perjury? An arrangement, which, if sustained by the court, will aid rogues and multiply their victims?

The answer is plain. The law never lends its aid to enforce covinous agreements—agreements between two or more persons designed to prejudice the rights of a third.

The holder of a negotiable note may lawfully sue it in the name of another, provided there is no fraudulent concealment of the true relations of the parties. The defendant will not thereby suffer any legal prejudice. He will be allowed to make precisely the same defense as if the action were brought in the name of the payee. But when the true relations of the parties are concealed, and the defendant, by fraudulent assertions and devices is cheated into the belief that the plaintiff is a *bona fide* holder for value, and this is

done for the purpose of shutting out all inquiry into the consideration, and depriving the defendant of a free and full defense, the law is otherwise. Such an arrangement not only partakes of champerty and maintenance, but it is worse. Maintenance is simply the support of another's quarrel. It does not imply that the defendant is thereby deprived of any just ground of defense. It simply implies that he is vexed and put to expense in defending a lawsuit, which otherwise might have been avoided. So in champerty. But when there is a secret, covinous agreement, by virtue of which one man is to carry on another's lawsuit, and is to do it under such false and fraudulent pretenses as will deprive the defendant of a just defense, the agreement not only partakes of champerty and maintenance, but it is worse. One more pernicious, one less likely to meet with favor in a court of justice, cannot well be conceived. It is the right of every one to have a fair trial. Whether prosecuting or defending—whether endeavoring to enforce a right or resist a wrong—he is entitled to have his case heard and passed upon by the court; and all secret, covinous agreements, by which he is to be deprived of such a trial, are against public policy, and will not be enforced.

The fraud, says Mr. Kerr, consists in a man's assuming to do one thing, while he really does another. 'If a man assign nominally only, retaining the beneficial enjoyment, it is fraudulent; because while he assumes to do one thing, he really does another. He retains the benefit, and, by a false act, endeavors to get rid of the burden. But if he assigns really, getting rid of the burden, and giving up really the benefit also (if any) to his assignee, it is not a fraudulent act.' (Kerr on Fraud and Mistake, 277). We again repeat, in order that our position may not be misunderstood, that the fraud in this case did not consist in bringing a suit in the name of one who did not own the note, for that the law allows; but in pretending that the plaintiff was the owner of the note, thus getting rid of the defense of fraud, or want or failure of consideration, when in fact he was not the owner; thus, in the language of Mr. Kerr, getting rid of the burdens, while retaining the benefit,—falsely assuming to do one thing while in reality doing another.

*Randall* v. *Howard,* 2 Black, 285, is a strong illustration of this doctrine. In that case, as in this, there had been a pretended sale, when none in reality was intended; and this ' friendly arrangement' had been entered into, as the plaintiff averred, to defeat the fraudulent claim of a third party. The court held that the averment that the claim of such third party was fraudulent did not change the character of the agreement, or ' friendly arrangement,' as it was called; that it was manifestly an agreement entered into to prejudice the rights of a third party, and was, therefore, in contemplation of law and in fact, a fraudulent arrangement, and the court would not aid either party to enforce it. See also, 1 Story's Eq., § 333, and authorities there cited.

We are not prepared to say the plaintiff did wrong in giving the defendant a release. It was the only way in which complete amends for the fraud that had been practiced upon him could be made. More than eight years had elapsed since the original fraud, if any, had been committed upon him by Manson in obtaining the note. An action for deceit was therefore barred by the statute of limitations. More than three years had elapsed since the judgment was obtained. A review would, therefore, be difficult, if not impossible. A release of the judgment was certainly the most direct and efficient mode of making amends. It would certainly be a strange principle in law, as well as morals, that would require the plaintiff, because he had engaged in the fraud, to go on and complete it. We think the law would not compel him to do so; and we think the release must be allowed to have its legitimate effect.

Giving effect to the release renders it unnecessary to consider the other questions raised in the case.

*Judgment for defendant.*

KENT, DICKERSON, and DANFORTH, JJ., concurred.

APPLETON, C. J., and BARROWS, J., concurred in the result.